UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARRIE A. CAMPBELL,**

      **Plaintiff,**

  v.

**OHIO DEPARTMENT
OF REHABILITATION AND
CORRECTION,** *et al.***,**

      **Defendants.**

Case No. 2:21-cv-4223
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth A. Preston Deavers**

**OPINION AND ORDER**

This matter is before the Court on Defendant April LaCourse's Motion to Dismiss (ECF No. 8) and Defendants Ohio Department of Rehabilitation and Correction and Annette Chambers-Smith's Motion for Partial Judgment on the Pleadings (ECF No. 9). For the following reasons, Defendant LaCourse's motion is **GRANTED in part** and **DENIED in part** and Defendants ODRC and Chambers-Smith's motion is **GRANTED**.

**I. Background**

This case arises from Plaintiff Carrie Campbell's termination from Ohio Department of Rehabilitation and Correction ("ODRC"). Ms. Campbell claims that ODRC terminated her employment because of her gender, race, and her daughter's disability. (Compl. ¶ 29, ECF No. 1.) Defendant April LaCourse is a Mental Health Administrator at ODRC. She directly supervised Campbell from February 2020 until May 2020. (*Id.* ¶ 19.) Defendant Annette Chambers-Smith is the ODRC Director. (*Id.* ¶ 20.)

According to the Complaint, Ms. Campbell started working at ODRC as an Activity Therapist on June 10, 2019. (*Id.* ¶¶ 2, 25.) When she applied, ODRC allegedly promised to

1

accommodate her needs related to her 12-year-old disabled daughter. (*Id.* ¶ 2.) ODRC permitted Ms. Campbell to carry her cell phone at work and have flexible arrival times. (*Id.* ¶ 35.)

As an Activity Therapist, she performed tasks relating to the inmates' mental health—including stabilizing mentally imbalanced inmates so that ODRC could move them to a long-term Residential Treatment Unit. (*Id.* ¶ 5.) Like other employees, Ms. Campbell had to complete a probationary period of twelve months before the ODRC offered her a permanent position. (*Id.* ¶ 25.) In November 2019, Bill Jamison, a Black man who directly supervised Ms. Campbell, conducted a probationary review and reported that Ms. Campbell met expectations and improved the inmates' programming and treatment. (*Id.* ¶¶ 18, 39, 40.) In January 2020, Mr. Jamison nominated Ms. Campbell to attend the Corrections Training Academy and asked her to conduct group therapy sessions at ODRC. (*Id.* ¶¶ 30, 42.) Ms. Campbell received no disciplinary actions or write-ups until February 2020. (*Id.* ¶¶ 25, 46, 47.)

**A. ODRC Allegedly Revokes Campbell's Accommodations for Her Disabled Daughter**

In February 2020, Ms. LaCourse became Ms. Campbell's supervisor. Ms. Campbell alleges that LaCourse discriminated against her because Campbell is white and LaCourse is Latina, because Campbell is a woman, and because of her daughter's medical condition. (*Id.* ¶¶ 3, 29.) LaCourse allegedly barred Campbell from carrying her cell phone at work and clocking-in after 7:30 a.m., despite Campbell and Jamison explaining that she enjoyed these accommodations since her start date. (*Id.* ¶¶ 38, 48.) LaCourse objected to Campbell's use of sick time when her daughter was hospitalized, but purportedly accommodated schedule changes and time off for a male Activity Therapist who also has a disabled daughter. (*Id.* ¶¶ 53, 65.)

2

### B. ODRC Disciplines Campbell

In addition to revoking accommodations for her daughter, Ms. Campbell alleges that ODRC employees subjected her to unwarranted disciplinary procedures. (*Id.* ¶ 55.) On February 12, 2020, Mr. Jamison placed Campbell on a performance improvement plan partly due to her alleged ineffective communication with inmates. (*Id.* ¶ 47.) Campbell states that this allegation stems from when she reported an inmate to her superiors because he threatened to have his brother kill her. (*Id.*) Ms. LaCourse allegedly cancelled Campbell's group therapy sessions without notice and, when Campbell asked for a reason, responded "you do not have your s***t together." (*Id.* ¶ 43.) LaCourse also allegedly revoked Campbell's nomination to the Corrections Training Academy. (*Id.* ¶ 162.) In another incident, LaCourse filled out a disciplinary form because Campbell supposedly did not conduct one or more scheduled group sessions in the Temporary Protective Unit (TPU). (*Id.* ¶¶ 54, 55.) ODRC gave Campbell a written warning even though Campbell was not in charge of TPU groups during that time. (*Id.* ¶ 55.)

ODRC held a disciplinary meeting with Ms. Campbell on March 3, 2020, for failing to lead a group session during the week of January 26, 2020, but later dropped the complaint because Campbell was not scheduled to lead that group until February 2020. (*Id.* ¶¶ 61, 62.)

On May 15, 2020, Ms. LaCourse conducted Ms. Campbell's final probationary review and allegedly denied Campbell the chance to provide input. (*Id.* ¶ 69.) ODRC scheduled a pre-disciplinary Q & A for Campbell on May 19, 2020, to discuss three days in April when Campbell clocked in one to two minutes late. (*Id.* ¶ 70.) Campbell avers that two of these instances were to help her daughter get into her care facility and the third instance was due to delays in the temperature check line at ODRC. (*Id.*)

### C. ODRC Terminates Campbell

On May 20, 2020, Mr. Jamison, Ms. LaCourse, and two other ODRC employees met with Campbell and terminated her. (*Id.* ¶ 71.) Campbell requested a union representative and asked about the grounds for her removal, but ODRC employees stated that they did not have to comply with these requests. (*Id.*) One month earlier, Jamison had ended Campbell's performance improvement plan and told her that "she would get off probation without an issue." (*Id.* ¶ 60.)

### D. Procedural History

On August 11, 2020, Plaintiff filed a charge with the Ohio Civil Rights Commission (OCRC) asserting unlawful termination and discrimination based on gender and disability. (*Id.* ¶ 17). OCRC issued a right to sue letter on May 25, 2021. (*Id.*) Plaintiff filed this suit against LaCourse, ODRC and Chambers-Smith on August 24, 2021.

Defendant LaCourse filed a motion to dismiss and Defendants OCRC and Chambers-Smith filed a partial motion for judgment on the pleadings. Ms. Campbell filed a Response in Opposition to the Motion to Dismiss (ECF No. 14), to which Defendant LaCourse replied (ECF No. 19). Plaintiff filed a Response in Opposition to the Motion for Partial Judgment on the Pleadings (ECF No. 14), to which Defendants ODRC and Chambers-Smith replied (ECF No. 20). The motions are ripe for review.

## II. Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts review Rule 12(c) motions for judgment on the pleadings with the same standard as motions to dismiss under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action

will be dismissed under this standard if "the facts alleged are insufficient to state a claim." *Stew Farm v. Natural Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Several considerations inform whether a complaint meets the facial-plausibility standard. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Further, the factual allegation of a pleading "must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not, however, "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Courts must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

### III. Analysis

Plaintiff Campbell asserts the following claims: Title VII based on gender, race, and color, Fourteenth Amendment Equal Protection Clause, Family and Medical Leave Act (FMLA) retaliation, Americans with Disabilities Act (ADA) failure to accommodate and retaliation, and Ohio Revised Code Chapter 4112 based on gender, race, and color. Plaintiff sues Defendant LaCourse in her individual and official capacities and Defendant Chambers-Smith only in her official capacity. (*See generally* Compl.)

### A. Claims Against Defendant April LaCourse in Her Individual Capacity

Defendant LaCourse moves to dismiss all claims against her in her individual capacity. She argues the claims are barred under the *Leaman* doctrine because Plaintiff filed an identical lawsuit in the Ohio Court of Claims.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. It provides that each state is a sovereign entity and is not amenable to suit without its consent. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1974). Ohio waived its Eleventh Amendment sovereign immunity for actions brought in a specially created Court of Claims. Ohio Rev. Code § 2743.02(A)(1). But filing suit in the Court of Claims "results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee...." Ohio Rev. Code § 2743.02(A)(1); *Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 951–52 (6th Cir. 1987) (en banc); *see also Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995) (explaining that the Court of Claims Act established a "*quid pro quo*, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees"). "The Sixth Circuit has consistently applied *Leaman* to bar plaintiffs from bringing suit in federal court against a state employee after bringing suit against the state in the Court of Claims based on the same claim." *Plinton v. Cty. of Summit*, 540 F.3d 459, 463 (6th Cir. 2008).

Plaintiff filed a Complaint against the State of Ohio in the Ohio Court of Claims on August 24, 2021, and filed a Complaint in the United States District Court for the Southern District of Ohio later that day. (ECF No. 14 at 3.) By pursuing claims in the Ohio Court of Claims against the

State of Ohio, Plaintiff Campbell waived her right to proceed in federal court against Defendant LaCourse in her individual capacity on "any cause of action…which the filing party has against a state officer or employee" based on the same act or omission as her Ohio Court of Claims actions. *Leaman*, 825 F.2d at 951.

Plaintiff Campbell argues that she can proceed against Defendant LaCourse in her individual capacity in federal court with an order from the Ohio Court of Claims that exempts Defendant LaCourse from her immunity status because her "act[s] or omissions[s] [were] manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2743.02(A)(1); (ECF No. 8 at 3). The Ohio Court of Claims has not issued any such immunity order. (ECF No. 19 at 3.) Therefore, Plaintiff Campbell's waiver of federal claims against Defendant LaCourse in her individual capacity remains in effect. *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989) ("state employees may not be sued [in their individual capacities] unless and until it has been determined by the Court of Claims that they are not entitled to immunity.") The claims against LaCourse in her individual capacity are dismissed. The Court will reconsider this decision if the Ohio Court of Claims finds LaCourse is not entitled to immunity. *See Plinton*, 540 F.3d at 462.

### B. Title VII Claims

Defendants move to dismiss Plaintiff's Title VII gender, race, and color discrimination claims because (1) Plaintiff did not exhaust her administrative remedies for her race and color discrimination claims, and (2) the Title VII claims against LaCourse and Chambers-Smith are redundant and duplicative of the claim against ODRC. Defendants concede that Plaintiff alleges a plausible claim against ODRC for Title VII gender discrimination.

7

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e. Title VII requires plaintiffs to satisfy "rigorous administrative exhaustion requirements and time limitations" before filing a civil suit in court. *Steiner*, 354 F.3d at 434–35 (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002)). To exhaust administrative remedies, a plaintiff must, among other things, allege discrimination in an EEOC charge before bringing an action regarding the same alleged discrimination to federal court. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). The EEOC investigates the charges, notifies the employer of its potential liability, and facilitates reconciliation between the employee and employer. *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citing *EEOC v. The Bailey Co., Inc.*, 563 F.2d 439, 447 (6th Cir. 1977)). Courts do not have subject matter jurisdiction over Title VII claims if the plaintiff does not exhaust administrative remedies. *Strouss*, 250 F.3d at 342.

**1. Plaintiff Failed to Exhaust Administrative Remedies for Race/Color Discrimination**

Defendants argue that the Title VII race or color discrimination claim must be dismissed because Plaintiff failed to check the "race/color" box or explicitly allege race or color discrimination in her OCRC and EEOC charges and therefore did not exhaust her administrative requirements. (*See* ECF No. 9-1.) Plaintiff argues that, even though she did not check the "race/color" box on her charge, she properly exhausted her race and color discrimination claims by stating she is white and providing the races of witnesses who will support her claims in an attachment to her OCRC charge. (ECF No. 15 at 4.)

A plaintiff exhausts her administrative remedies for a Title VII discrimination claim if she "explicitly files the claim in an EEOC charge, or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss*, 250 F.3d at 342. This is known as the "expected scope of investigation test." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002). Where

8

the plaintiff does not explicitly state the protected class in the charge, she may still have exhausted her administrative remedies if the facts described the charge "would prompt the EEOC to investigate a different, uncharged claim." *Davis*, 157 F.3d at 463.

Plaintiff did not exhaust her administrative remedies for her Title VII race or color discrimination claim. She did not check the box for race/color discrimination or explicitly state there was race/color discrimination. Furthermore, including the witnesses' races would not, alone, reasonably prompt the OCRC or EEOC to investigate claims of race or color discrimination. *See Young v. DaimlerChrysler Corp.*, 52 F. App'x 637, 640 (6th Cir. 2002) ("the EEOC charge must, at a minimum, relate *facts* that would prompt the EEOC to consider or investigate other forms of discrimination") (emphasis in original). Nor has Plaintiff proved that the OCRC or EEOC actually investigated race or color discrimination in connection with her charge. (ECF No. 1-1 at 1 ("the Commission found insufficient evidence to support Charging Party was terminated, disciplined, and denied a reasonable accommodation due to her disability and sex.")) *See Davis*, 157 F.3d at 463 (finding the exhaustion requirement satisfied, despite claim being uncharged, "[w]hen the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against the plaintiff"). Applying the expected scope of investigation test to this case, the Court finds that a race and color discrimination claim was not "reasonably expected to grow out" of her charge. Plaintiff's Title VII race and color discrimination claims are dismissed.

    **2. Title VII Claims Against LaCourse and Chambers-Smith are Redundant**

"When an employee has already sued a corporate employer under Title VII, an official capacity suit against a supervisor adds nothing to the litigation." *Ankofski v. M&O Mktg., Inc.*, 218 F. Supp. 3d 547, 553 (E.D. Mich. 2016) (citing *Maudlin v. Inside Out Inc.*, No. 3:13-CV-354, 2014 WL 1342833, at *3 (S.D. Ohio Apr. 3, 2014)). Official capacity liability is "simply another avenue

9

for a plaintiff to establish liability on an employer," as the employer would be responsible for any relief the plaintiff is entitled to by virtue of their official capacity suit against an employee. *Maudlin*, 2014 WL 1342833, at *4. Therefore, suing supervisors in their official capacities, in addition to suing the employer, is "redundant and duplicative" and warrants dismissal. *Id*.

Plaintiff sues Defendants LaCourse and Chambers-Smith in their official capacities and ODRC under the same Title VII allegations. Her claims against the LaCourse and Chambers-Smith are redundant because if she establishes Title VII liability against them in their official capacities, she recovers damages from Defendant ODRC. (*See* ECF No. 1 at 19-21.) Therefore, Plaintiff's Title VII claims against LaCourse and Chambers-Smith are dismissed.

## C. Fourteenth Amendment Equal Protection Claims

Plaintiff Campbell asserts violations of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983. (*See* ECF No. 1 at 21–23.) Defendants argue these claims must be dismissed because they are entitled to Eleventh Amendment immunity. The Court agrees.

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment bars such suits unless the State has waived its immunity or Congress has acted to override that immunity. *Id.* Ohio has not waived its sovereign immunity and Congress did not disturb states' Eleventh Amendment immunity when it passed 42 U.S.C. § 1983. *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992). "ODRC is an instrumentality of the state of Ohio, protected by the Eleventh Amendment to the same extent as is the state." *Allen v. Ohio Dep't of Rehab. & Corr.*, 128 F. Supp. 2d 483, 490 (S.D. Ohio 2001). Therefore, Defendant ODRC is entitled to Eleventh Amendment sovereign immunity.

The same Eleventh Amendment sovereign immunity analysis applies to Plaintiff's § 1983 claims against Defendants LaCourse and Chambers-Smith in their official capacities for monetary damages. Eleventh Amendment immunity extends to state officials sued in their official capacity. *McCormick v. Mia. Univ.*, No. 1:10-cv-345, 2011 WL 1740018, at *18 (S.D. Ohio May 5, 2011) (citing *Turker v. Ohio Dep't Rehab. & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998)). That is because "'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting *Will*, 491 U.S. at 71). Plaintiff's § 1983 claims against LaCourse and Chambers-Smith in their official capacities for monetary damages are dismissed.

The Eleventh Amendment does not, however, bar Plaintiff from seeking prospective injunctive relief from LaCourse and Chambers-Smith in their official capacities. *See Ex Parte Young*, 209 U.S. 123 (1908). "Under *Ex Parte Young*, a federal court can issue prospective injunctive relief compelling a state official to comply with federal law because 'it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.'" *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 673 (S.D. Ohio 2017) (citing *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008)). "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Defendant Chambers-Smith concedes that Plaintiff Campbell's 42 U.S.C. § 1983 claim for prospective injunctive relief should not be dismissed as it satisfies the *Ex Parte Young* exception.

(ECF No. 20 at 9.) As for Defendant LaCourse, Plaintiff adequately pleads an ongoing violation of federal law because she is asking for "reinstatement with an option to pursue a position as a Trainer or ATS-II or Parole Officer" from LaCourse. (ECF No. 1 at 18.) Plaintiff Campbell also seeks a "court order barring each Defendant from continuing their on-going practice, custom and habit of discriminating against her…should she be reinstated." (*Id.*) The Sixth Circuit has held "that claims for reinstatement are prospective in nature and appropriate subjects for *Ex Parte Young* actions." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (*citing Turker*, 157 F.3d at 459). Therefore, Plaintiff Campbell appropriately seeks prospective injunctive relief. The Court **DENIES** Defendant LaCourse's Motion to Dismiss as to Plaintiff Campbell's 42 U.S.C. § 1983 claim for declaratory and prospective injunctive relief.

   D. **FMLA Claims**

Defendants move to dismiss Plaintiff's FMLA claims because she did not work for ODRC for more than twelve months and was not entitled to FMLA benefits. The FMLA prohibits employers from discriminating against employees who have used FMLA leave and from using FMLA leave as a negative factor in employment actions. 29 U.S.C. § 2615(a)(2). To state a claim of retaliation under the FMLA, an employee must allege that: "(1) he engaged in an activity protected by the [FMLA]; (2) that this exercise of his protected rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Morris v. Fam. Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009) (quoting *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

To bring a retaliation claim under the FMLA, an employee must be eligible for FMLA benefits. *Staunch v. Cont'l Airlines, Inc.,* 511 F.3d 625, 629 (6th Cir. 2008). An eligible employee

12

is one who has been employed for at least twelve months by the employer to whom leave is requested, and who has been employed by that employer for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of the leave. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(2). As alleged in her Complaint and admitted in her Memorandum in Opposition, Plaintiff Campbell worked for ODRC from June 10, 2019, to on or about May 20, 2020, falling short of 12 months by approximately 20 days. (ECF No. 1 at 21; ECF No. 15 at 8.) Plaintiff argues that "futility or frustration of the legislative purposes behind the FMLA laws should allow this claim to proceed," but acknowledges that "the weight of authority within the Sixth Circuit does support Defendant[s]'…position." (ECF No. 15 at 8.) Because Plaintiff Campbell was ineligible for FMLA benefits, she cannot establish that she was engaged in a "protected activity" or "exercising her rights" under the FMLA. *Davis v. Mich. Bell Tel. Co.*, 543 F.3d 352-53 (6th Cir. 2008). Plaintiff's FMLA claims are dismissed.

### E. ADA Claims

Plaintiff Campbell seeks monetary, declaratory, and prospective injunctive relief against Defendants LaCourse, ODRC, and Chambers-Smith for failing to accommodate her daughter's disability and retaliating against her in violation of the ADA. (*See* ECF No. 1 at 24-26.)

**1. Plaintiff Does Not Allege ADA Failure to Accommodate Prima Facie Case**

To set forth a prima facie case for failure to accommodate under the ADA, a plaintiff must allege that: "(1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified for her position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) her employer failed to provide a reasonable accommodation." *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015). The ADA defines "disability" as "(A) a physical or mental impairment that

substantially limits one or more major life activity of such individual; (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). As Defendants point out, Plaintiff Campbell has not alleged that she is disabled within the meaning of the ADA, but rather that her daughter is. (ECF No. 1 at 2.) Because she fails to establish a prima facie case, her claim for failure to accommodate under the ADA is dismissed.

### 2. Plaintiff Does Not Allege ADA Retaliation Prima Facie Case

An ADA retaliation claim has four prima facie elements: "(1) the plaintiff engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Sharp v. Waste Mgmt., Inc.*, 47 F. Supp. 3d 584, 600 (S.D. Ohio 2014) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).

Plaintiff's claim fails because she does not allege the first prima facie element of ADA retaliation. An individual engages in protected activity, when, prior to her termination, she opposes any act made unlawful by the ADA or files a charge, testifies, or participates in an investigation under the ADA. *See* 42 U.S.C. § 12203(a). Plaintiff Campbell has not alleged or demonstrated that she engaged in any of these protected activities. Instead, Plaintiff Campbell cites the EEOC website and argues that protected activity includes employment practices such as hiring, firing, pay, lay-off and "all other employment related activities." (ECF No. 15 at 9–10.) But this list of work activities describes potential "adverse employment actions" for ADA retaliation, not "protected activities." *See* 42 U.S.C. § 12203(a). Plaintiff, therefore, does not establish prima facie cases for ADA failure to accommodate or retaliation. Her ADA claims are dismissed.

### F. State-Law Claims

Plaintiff Campbell seeks monetary, declaratory, and prospective injunctive relief against the Defendants for violations of Ohio Revised Code Chapter 4112.02(A) for unlawful discriminatory conduct based on gender, race, color, and medical disability of a minor child. (*See* ECF No. 1 at 26–29.) Defendants ODRC and Chambers-Smith argue that the Ohio Revised Code Chapter 4112 claims against them must be dismissed for lack of subject matter jurisdiction. (ECF No. 9 at 8.) In her Memorandum in Opposition, Plaintiff Campbell voluntarily dismisses her state-law claims against ODRC and Chambers-Smith. (ECF No. 15 at 8.) She does not voluntarily dismiss her state-law claims against LaCourse.

The Eleventh Amendment of the United States Constitution bars federal court jurisdiction over pendent state law claims against nonconsenting states or state officials. *Pennhurst*, 465 U.S. 104, 120-21 (1984). "The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment…The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment." *McCormick*, 693 F.3d, at 664–65 (quoting *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520–21 (6th Cir. 2007)). Ohio has not its waived sovereign immunity for state actions, unless commenced in the Ohio Court of Claims. Ohio Rev. Code. § 2743.02.

Under Ohio Revised Code § 9.86, "no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 9.86. If a plaintiff wishes to proceed on the

15

basis that the state employee was not acting in the scope of her official duties or acted with malicious purpose, bad faith, or in a wanton or reckless manner, they must seek a determination as to the employee's immunity from the Ohio Court of Claims before commencing an action for damages in another court. Ohio Rev. Code § 2743.02(F).

Plaintiff asks this Court to stay its decision on dismissal of her Ohio Revised Code Chapter 4112 claims against Defendant LaCourse because the Ohio Court of Claims has stayed its action. (ECF No. 14 at 14.) But Plaintiff has not received an immunity determination, which is necessary for her to bring state claims against LaCourse, a state employee, in federal court. For now, this Court does not have subject matter jurisdiction over her pendant state law claims. (ECF No. 19 at 3.) Accordingly, this Court **GRANTS** Defendant LaCourse's Motion to Dismiss Plaintiff's state-law claims unless and until the Ohio Court of Claims determines that LaCourse is not entitled to civil immunity under Ohio Revised Code § 9.86.

### IV. Conclusion

For the reasons stated, the Court **GRANTS in part** and **DENIES in part** Defendant LaCourse's Motion to Dismiss (ECF No. 8). Further, the Court **GRANTS** Defendants ODRC and Chambers-Smith's Motion for Partial Judgment on the Pleadings (ECF No. 9). This case remains open.

**IT IS SO ORDERED.**

**8/25/2022**                                                            **s/Edmund A. Sargus, Jr.**
**DATE**                                                                 **EDMUND A. SARGUS, JR.**
                                                                            **UNITED STATES DISTRICT JUDGE**